■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER BATTEE, Appellant. — Judgment unanimously affirmed. Memorandum: Defendant appeals from his convictions after a jury trial for robbery, first degree, and attempted robbery, first degree, arising out of the armed robbery of a delicatessen. His main point on appeal is that police acted unlawfully in entering his house to arrest him without a warrant (see *Payton v New York,* 445 US 573) and that therefore the evidence seized in the house and testimony concerning a showup identification of defendant immediately after his arrest should both have been excluded as "fruitful" of the improper police action. The facts established at the suppression hearing are as follows. The owner of the store and the clerk, both of whom were present during the crime, told police who arrived immediately thereafter that the robber, whom they knew as a regular customer, had displayed a gun. They described the perpetrator — a black man named "Chris" — in detail and said that he lived around the corner at a certain address. Police proceeded directly to the residence indicated and rang the bell. Although they saw a black man running through the house, no one answered. A taxi driver waiting in front of the house said he was waiting for a fare named "Christopher." Police learned from neighbors that the house was owned by one Derrick Morton, and contacted his mother, Verna Morton, who lived nearby. When she arrived she told police that defendant had been living in the house for about two months. (There is no showing that defendant occupied any particular room. It appears that he was sleeping on a couch in the living room.) She said that although her son had given her keys to the house, she did not have them with her. She took care of her son's finances and paid all of the bills in connection with his house. Unable to reach Derrick, Mrs. Morton gave police permission to enter and after they had done so and seized stolen goods in plain view, gave them permission to search the house for the weapon, a .32 caliber pistol, which, the hearing evidence indicated, they found on a floor in a closet near where defendant was arrested. Although we agree with defendant that he has standing to contest the entry and search of the house where he had been living for the past two months (see, generally, *United States v Salvucci,* 448 US 83, 93; *People v Ponder,* 54 NY2d 160), we do not agree that the entry was unlawful. Judging the police conduct "in accordance with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act' (*Brinegar v United States,* 338 US 160, 175)" (*People v Adams,* 53 NY2d 1, 11, cert den 454 US 854), and considering the exigency of the circumstances including the gravity of the crime, the uncontradicted evidence that defendant had a gun, and the likelihood that he would attempt an escape (see *People v Mealer,* 57 NY2d 214), and the unsuccessful efforts of police to locate Derrick Morton, and their "reasonable, good faith reliance" (*People v Adams, supra,* p 9) on Mrs. Morton's consent, we find the entry to have been a reasonable response to the situation. The stolen goods, found in plain view, were, therefore, properly admitted. Even if, as defendant argues, the subsequent search for and seizure of the gun presents a separate issue and would not be justified under *People v Mealer (supra)* or *People v Adams (supra),* we find its admission harmless beyond a reasonable doubt (see

*People v Sanders,* 56 NY2d 51, 66-67; *People v Crimmins,* 36 NY2d 230, 237). The proof of defendant's guilt, including positive identification by the two eyewitnesses, was overwhelming and the testimony of those eyewitnesses that defendant wielded a gun was uncontradicted. We find the showup identification procedure in which defendant, immediately after his arrest, was identified by Linda Yannello, one of the victims, to have been acceptable in the interest of prompt identification and not unnecessarily suggestive (see *People v Smith,* 46 AD2d 639, affd 38 NY2d 882, citing *Stovall v Denno,* 388 US 293, 302). Nor is there merit to defendant's claim that the photo array in which Yannello identified him was impermissibly suggestive. Thus, these procedures could not have tainted her in-court identification which, in any event, was shown to have an independent basis (see *People v Adams,* 53 NY2d 241, 248). Defendant failed to preserve the alleged error in permitting a police officer to bolster Yannello's identification testimony in violation of *People v Trowbridge* (305 NY 471) by testifying to her showup identification (see CPL 470.05, subd 2; *People v Love,* 57 NY2d 1023; *People v West,* 56 NY2d 662), and we find no reason to reach the question in the interest of justice. (Appeal from judgment of Supreme Court, Erie County, Marshall, J. — robbery, first degree, and attempted robbery, first degree.) Present — Dillon, P. J., Hancock, Jr., Callahan, Denman and Green, JJ.