THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILBERT HENDERSON, Appellant.

Fourth Department, April 5, 1985

### APPEARANCES OF COUNSEL

*Richard H. Speranza* (*Thomas Brandt* of counsel), for appellant.

*Peter L. Broderick, District Attorney* (*Shavasp Hanesian* of counsel), for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J. P.

On appeal from convictions after a jury trial on charges of robbery, assault and criminal possession of a weapon, defendant

argues that the rifle seized in plain view during a warrantless search of his apartment should have been suppressed. The question is whether there were exigent circumstances justifying the warrantless entry (*see, People v Mealer,* 57 NY2d 214, 219; *People v Battee,* 94 AD2d 935). We find the entry justified. The police in response to a report of a robbery arrived within minutes of the call at the apartment house in Niagara Falls where the incident occurred and defendant resided. As distinguished from the situation in *People v Lott* (102 AD2d 506), where we found no exigency, the police, when they went in the apartment, had reason to believe that defendant, who had used a gun in the robbery, was inside the apartment with a loaded rifle which presented an imminent danger to them or others. Suppression was properly denied.

Two police officers testified at the *Huntley* hearing: Lieutenant Louis Curcione, who, with his partner, was the first on the scene, and Officer James Tarapczynski, who seized the weapon in defendant's apartment. Upon reaching the apartment building at about 1:15 A.M., Curcione said, he heard the sound of "the bolt action of a rifle" coming from the side of the building. Fearing that this was the sound of a rifle being loaded, and expecting "the flash" of a shot, Curcione retreated to his car and radioed for assistance. When other officers arrived, Curcione told them what he had heard and they fanned out around the area searching for "someone * * * back there with a rifle." Tarapczynski testified that in searching the grounds for the person with the gun, he noticed that a window in the rear ground floor apartment was open and that music was coming from inside. Tarapczynski then joined Curcione in the front apartment where the police were interviewing the two occupants, both of whom had witnessed the crime, and the two victims. The two eyewitnesses told the officers that they knew defendant, who lived in the other ground floor apartment at the rear of the building, and had seen him rob the victims with a gun. They believed he was still in his apartment. Tarapczynski and another officer went outside and back to the rear apartment with the open window and climbed in. The television and radio were playing and the stove burners were lit but no one was there. In plain view on the floor by the outer door of the apartment, Tarapczynski saw a sawed-off .22 caliber rifle which he seized. It was not loaded.

The suppression court held that the gun was admissible, relying on the "hot pursuit" exception to the warrant requirement. That doctrine does not apply here because "there was no immediate or continuous pursuit of [defendant] from the scene of

a crime" (*Welsh v Wisconsin,* 466 US __, __, 104 S Ct 2091, 2099; *see generally, United States v Santana,* 427 US 38; *People v Levan,* 62 NY2d 139). We hold, however, that the entry was justified due to exigent circumstances and to the extent necessary to our holding we make such findings as the trial court could have made and as are warranted by the evidence (*see,* CPL 470.15 [1]; *People v Ridgeway,* 101 AD2d 555, 565, *affd* 64 NY2d 952; *People v Casado,* 83 AD2d 385).

"In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant" (*Payton v New York,* 445 US 573, 590; *see, People v Levan, supra,* p 144). The People have the burden of justifying the warrantless entry on the ground of exigency (*see, People v Knapp,* 52 NY2d 689, 694; *People v Hodge,* 44 NY2d 553, 557).

Courts have found exigent circumstances where "delay in the course of an investigation * * * would gravely endanger [the lives of police officers or of others]" (*Warden v Hayden,* 387 US 294, 298-299); where " 'evidence or contraband [is] threatened with removal or destruction' " (*People v Vaccaro,* 39 NY2d 468, 472, quoting *Chapman v United States,* 365 US 610, 615); and where urgency has arisen "in light of the gravity of the crime, the suspect's possession of and willingness to use a gun, and the likelihood of his attempting to escape" (*People v Mealer,* 57 NY2d 214, 219, *supra; see also, People v Battee,* 94 AD2d 935, *supra*). Here, because the sound of the "bolt action of a rifle" came from the direction of the rear of the building where there was an open window and because their search revealed no one in the yard outside the building, the police could reasonably have assumed that the sound came from inside the rear apartment with the open window. When they learned that witnesses thought the robber was in that apartment and that he had a gun, they could fairly conclude that it could have been the action of the robber in loading the gun which produced the sound. In view of the serious nature of the crime, the presence of the victims in a neighboring apartment, the evidence suggesting that the robber was in the apartment with a loaded gun, and the fact that the ground floor apartment had an open window through which he might attempt an escape with use of the gun, we hold that exigent circumstances justified the warrantless entry (*see, Warden v Hayden, supra; People v Mealer, supra; People v Battee, supra*).

*People v Lott* (102 AD2d 506, *supra*) is different. There, the victim entered the police station and reported that defendant

had robbed her in his apartment. She said that he had a gun in the apartment but did not indicate whether it was loaded or had been used in the robbery. It does not appear that there was then any reason to believe that defendant was still in the apartment. On arrival police found that defendant was there, arrested him, and seized the gun. The compelling factors in the case at bar (e.g., a reasonable basis for believing that defendant was in possession of a loaded gun which he might use against police or others in the apartment house) were not present in *Lott* and we found that the failure to obtain a warrant in that case was not justified.

We briefly address one other issue, i.e., whether the court erred in denying defendant's motion for a mistrial when it developed during cross-examination of one of the two victims that the positive identification of defendant given on direct was based entirely on his having seen defendant at the preliminary hearing and not on his recollection of defendant at the scene of the crime. The court in the presence of the jury granted defendant's motion to strike the witness' identification testimony and defense counsel in a thorough cross-examination on the point and in summation left no doubt that the witness was unable to identify defendant. Under the circumstances, considering the unequivocal identification by the two eyewitnesses who had known defendant for some time prior to the crime, we find that the jury's having heard the stricken testimony does not amount to a "legal defect in the proceedings * * * which is prejudicial to the defendant and deprives him of a fair trial" (CPL 280.10 [1]) so as to warrant a mistrial (*see generally, People v Young,* 48 NY2d 995; *People v Patterson,* 83 AD2d 691). We do not find the sentence to be excessive.

The judgment should be affirmed.

CALLAHAN, DOERR, DENMAN and O'DONNELL, JJ., concur.

Judgment unanimously affirmed.