■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK SOLIMINE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Chetta, J.), rendered September 23, 1982, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Sharpe, J.), of that branch of the defendant's omnibus motion which was to suppress statements made by him to the police, and the denial, after a hearing (Chetta, J.), of that branch of his omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

At approximately 9:30 P.M. on the evening of February 15, 1980, a man was fatally shot in the men's room of the Laurel Hill Bar in Queens. At the suppression hearing, Detectives McDevitt and Babcock testified that in the course of their investigation of the shooting that night, they were told by patrons of the bar who knew the defendant that he had committed the shooting. According to Detective Babcock, "Everybody in the bar knew the [shooter] as Frankie the Dip". Sometime after midnight, the detectives arrived at the defendant's apartment building in Brooklyn, and asked the defendant's landlord to telephone them if he heard anyone in the defendant's apartment. The detectives received a call from the landlord at around 11:30 the next morning. Detective McDevitt then telephoned the defendant's apartment and spoke with a man who identified himself as the defendant. McDevitt signaled to Babcock that he had the defendant on the telephone and Babcock alerted the 70th Precinct, located in the defendant's neighborhood, that they had located a homicide suspect armed with a shotgun within the jurisdiction of the 70th Precinct. Officers from the 70th Precinct and the Emergency Services Unit immediately went to the defendant's building. McDevitt's phone conversation with the defendant lasted approximately one-half hour. During the conversation, the defendant admitted that he shot the deceased. At some point during the conversation, the defendant told McDevitt that he was aware that his apartment was surrounded by the police, and that he was going to blow them up with a tank of propane gas if they came in. Eventually, McDevitt persuaded

the defendant to put his shotgun on the table and his hands on his head and surrender. When the defendant opened the door to his apartment, the police rushed in and arrested him. The arrest was effectuated without the benefit of a warrant. "In determining whether exigent circumstances exist so as to permit such a warrantless entry into an individual's home, the following factors must be considered: (1) the gravity of the offense; (2) whether there is reason to believe that the suspect is armed; (3) whether there is reasonably trustworthy information to believe that the suspect committed the crime involved; (4) whether there is a strong reason to believe that the suspect is in the premises being entered; and, (5) the likelihood that the suspect will escape if not swiftly apprehended" *(People v Gordon,* 110 AD2d 778, 780).

We conclude that under the circumstances of the instant case, exigent circumstances existed to justify the warrantless entry into the defendant's apartment. Accordingly, those branches of the defendant's omnibus motion which were to suppress statements made to the police and physical evidence were properly denied.

While some of the trial prosecutor's remarks in summation were improper, in light of the overwhelming evidence of guilt, those unwarranted comments did not taint the conviction *(see, People v Roopchand,* 107 AD2d 35, *affd* 65 NY2d 837).

The defendant's other contentions are without merit. Thompson, J. P., Niehoff, Weinstein and Eiber, JJ., concur.